Kasten and wife, Respondents, vs. Markham, Appellant.

*June 4—June 26, 1957.*

For the appellant there was a brief by *Dougherty, Arnold, Philipp & Murray,* attorneys, and *James P. O'Neill* of counsel, all of Milwaukee, and oral argument by *Mr. O'Neill.*

For the respondents there was a brief and oral argument by *Ken Traeger* of Gresham.

Martin, C. J.   On September 8, 1954, Carl E. Kasten and his wife entered into a real-estate listing contract with the defendant for the sale of their property for $18,500.  By

agreement dated November 15, 1955, they revived the prior contract at the new price of $16,500.

On January 24, 1956, plaintiffs entered into a written agreement (Exhibit 1) for the exchange of real estate between themselves and Albert and Deloris Senneff, which agreement provided for the payment by the Senneffs to the plaintiffs of $6,000 which represented the differential between the prices of the properties exchanged. This agreement, though not signed by the defendant, was prepared by him and his signature appears thereon as a witness and notary. The following language appears in the exchange agreement under the heading "Miscellaneous:"

"William H. Markham personally agrees to take the property now owned by the second parties and to pay the first parties therefor as of March 1, 1956, the sum agreed in separate writing between the parties of the first part and the said William H. Markham, pledging the entire brokerage commissions toward the payment of the said sums so agreed to be paid, as liquidated damages in case of failure to accept and pay for the property known as lot Two, block Twenty-Seven of South Addition to the village now city of Horicon. In the event that for any reason a longer time may be required by the second party to complete his payment of the differential of $6,000, then the broker may extend the time agreed."

Also on January 24, 1956, another contract (Exhibit 2) was entered into between plaintiffs and defendant. It provided in part:

"For and in consideration of the conveyance by the parties of the first part of the Albert Senneff property exchanged for residential property this day sold by the first parties to the second party, by this novation, the second party agrees to accept $1,000 of the differential in consideration for first parties' share of the brokerage fees, and to pay or cause to be paid the balance of $9,000, for the Senneff property, taken on the trade at the following stipulated prices, to wit:

"Kasten property as per contract of exchange..$17,000
Senneff property as per contract of exchange..  11,000

Differential to be paid by the Senneff note due
March 1, 1956, payable to the broker........  $6,000
Less the said sum........................  1,000

Due the Kastens as of March 1, 1956.... $5,000"

It is stipulated that defendant has paid to the plaintiffs the sum of $15,129.47, $1,000 of which represents credit to defendant for his broker's commission.

Plaintiffs claim that the defendant owes them $1,870.53, the difference between $17,000 and the $15,129.47 accounted for. Defendant claims he owes them only $870.53. He made the following offer of proof:

"That the Kastens at no time after November 15, 1955, ever stated to Mr. Markham that they were repudiating the contract which has been marked and offered in evidence as Exhibit A [the November 15, 1955, listing contract]. And that that agreement remained in full force and effect up to the time of the execution of the contracts which have been offered in evidence as plaintiffs' Exhibits 1 and 2; that Mr. Kasten approached Senator Markham with the proposition of disposing of his property and that Mr. Kasten reported to Senator Markham that Mr. Senneff had called upon him on two occasions and had expressed a willingness to take over the Kasten property on the basis of a cost of $16,000, providing the Senneff property would be disposed of on the basis of $10,000. That thereafter Senator Markham talked with Mr. Senneff about the proposition mentioned by Mr. Kasten and that Mr. Senneff stated that it would be necessary for him to finance the transaction if he were to take over the Kasten property and that such financing would have to be arranged through a bank at Horicon. And that in order to obtain the financing necessary to go through with the deal, so that Mr. Kasten could dispose of his property, it would be necessary for the parties upon the trade of the property— and that this actually was a trade of property for the parties— to ascribe a value of $11,000 to the Senneff property and

$17,000 to the Kasten property, and it was upon the basis of that understanding that the senator drafted up the agreements which have been marked as plaintiffs' Exhibits 1 and 2 and introduced in evidence. And it was upon that basis that he prepared the warranty deed for the Kasten property, transferring it to the Senneffs, which has been marked plaintiffs' Exhibit 4 and received in evidence. That at no time did Mr. Markham ever tell Mr. or Mrs. Kasten that he would see that they got $16,000 net to them. And that upon the basis of the understanding and upon the basis of the contracts which have been introduced in evidence, that Mr. Markham has complied with the terms of the agreement and that he has accounted to the plaintiffs for the price of $16,000 which was attributed to the Kasten property. And we further offer to show by Mr. Markham that in plaintiffs' Exhibit 2, the first paragraph, that the intention was to express the thought that the property here was actually valued upon the basis of $10,000 for the Senneff property and $16,000 for the Kasten property. And that the reason why Exhibit 1 did not have a reference to the price of the two properties was because of the reasons which I suggested, and that was the reason why there was put into Exhibit 1 the paragraph with reference to the sum of $6,000, representing the differential between the prices of the two properties exchanged and to be held in trust by the broker."

The trial court refused to receive defendant's offer of proof on the ground that "it appeared that there was a valid written agreement between the parties which was not ambiguous and that there was no fraud or mistake." This was prejudicial error.

These facts are undisputed: The Senneffs were willing to buy the Kasten property but insisted on an exchange so that they could dispose of their own. The Kastens did not want the Senneff property, so Markham offered to buy it from them when the exchange was made. When the transaction was entered into the Senneffs owed the Kastens $6,000 as the differential on the exchange which sum they paid to Markham in trust. Markham was entitled to $1,000 broker's

commission from the Kastens, which Markham pledged to the Kastens on his purchase of the Senneff property. As to the disposition of the $6,000 differential there is no dispute,—Markham was to pay $5,000 to Kastens to complete the purchase of the Kasten property by the Senneffs, and $1,000 (representing his commission) was to apply on Markham's purchase of the Senneff property from the Kastens. The question presented is—What is the balance owed by Markham to Kastens for the Senneff property?

In Exhibit 2, the agreement setting forth Markham's purchase of the Senneff property, he agrees to accept $1,000 of the differential for his broker's commission (on the sale of the Kasten property) and "to pay or cause to be paid the balance of $9,000" for the Senneff property. This can only mean that the price of the Senneff property is $10,000, and that of the Kasten property, inferentially, $16,000. Following this language, however, is the language "at the following stipulated prices, to wit:" and there follows the tabulation stating the price of the Kasten property as $17,000 and that of the Senneff property as $11,000.

The terms of the contract are clearly contradictory and parol evidence was admissible under the rule stated in 20 Am. Jur., Evidence, p. 999, sec. 1147:

"Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the extent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract and to determine the object on which it was designed to operate." (See Wisconsin cases cited.)

Plaintiffs contend that defendant should not be permitted to introduce parol evidence explaining the use of the $17,000 and $11,000 figures for the purpose of aiding the Senneffs in obtaining financing through the Horicon bank—for the reason that it would amount to evidence of a conspiracy to

defraud the bank, citing *Giese v. Giese* (1943), 242 Wis. 581, 9 N. W. (2d) 67. The facts at this stage do not show an attempt to mislead. When the defendant is given the opportunity to introduce his evidence, it will be for the trier of the facts to determine its sufficiency and weight and whether there was a fraud.

*By the Court*—Judgment reversed, and cause remanded for a new trial.